# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGELIO VERGARA MORALES,<br><br>   Petitioner,<br> v.<br><br>CHAD BIANCO,<br><br>   Respondent. | No. 5:23-cv-00102-FLA-AJR<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |

   This Report and Recommendation is submitted to the Honorable Fernando L. Aenlle-Rocha, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

# I.

## INTRODUCTION

On January 20, 2023, Rogelio Vergara Morales ("Petitioner"), then in the custody of the Riverside County Sheriff, constructively filed a habeas petition pursuant to 28 U.S.C. § 2254 (the "Petition").[1]  (Dkt. 1.)  On June 7, 2023, Sheriff Chad Bianco ("Respondent") filed an Answer to the Petition as well as a Memorandum of Points and Authorities, (Dkt. 14), and lodged portions of the record from Petitioner's state court proceedings.  (Lodgments 1-20, Dkt. No. 15.)  On September 6, 2023, Petitioner filed a Reply (the "Reply").  (Dkt. 21.)

For the reasons discussed below, it is recommended that the Petition be DENIED on the merits and this action be DISMISSED with prejudice.

# II.

## PRIOR PROCEEDINGS

On December 3, 2018, a Riverside County Superior Court jury convicted Petitioner of 62 counts involving numerous businesses and individuals.  (Dkt. 1 at 2; Dkt. 15-28 at 4-5.)  On June 18, 2021, the California Court of Appeal reversed all of Petitioner's convictions except counts 43 and 51 through 63.  (Dkt. 15-28 at 59-60.)  For counts 43 and 51 through 63, the Court of Appeal vacated Petitioner's sentence and remanded for resentencing on the remaining counts.  (Id.)

The instant Petition is based on Petitioner's convictions for Filing a False Instrument (Count 43), Stalking with a Restraining Order (Count 51), and Disobeying a Court Order (Counts 52-63).  (See Dkt. 1 at 2.)

---

[1] Even though Petitioner is no longer in custody, this court maintains jurisdiction since Petitioner was in custody at the time of filing.  See Tyars v. Finner, 709 F.2d 1274, 1279 (9th Cir. 1983) ("[I]f the petitioner is in custody when his petition is filed, his subsequent release from custody does not itself deprive the federal habeas court of its statutory jurisdiction.").

2

### III.

### FACTUAL BACKGROUND

The following facts, taken from the California Court of Appeal's written decision on direct review, have not been rebutted with clear and convincing evidence and must, therefore, be presumed correct.  28 U.S.C. § 2254(e)(1); <u>Slovik v. Yates</u>, 556 F.3d 747, 749 n.1 (9th Cir. 2009).

> [Petitioner] Rogelio Vergara Morales, an attorney, and Mireya Arias, his wife…, concocted a plan to file gender discrimination lawsuits against minority owned hair salons and dry cleaners. [Petitioner and his wife] went together to the hair salons and each received haircuts, they would pay for them and, if Arias paid more for her haircut, [Petitioner] would file a lawsuit against the business under Civil Code section 51.6, the Gender Tax Repeal Act of 1995 (Gender Act). They employed the same practice against dry cleaners, each dropping off a shirt, and if Arias was charged more than [Petitioner] for the cleaning, [Petitioner] would file a gender discrimination lawsuit pursuant to the Gender Act against the dry cleaning business. [Petitioner] contacted some of the businesses after filing suit and offered a settlement. [Petitioner] stalked an attorney who helped some of the victims defend against the lawsuits and who organized a demonstration against these gender discrimination lawsuits at [Petitioner's] law office; he also disobeyed a restraining order she had obtained. Arias filed a restraining order against the attorney and several other persons who were present at the protest. The restraining order was denied and the parties were awarded attorney fees. [Petitioner] sent an email to the attorney for the parties who defended the restraining order advising he would file a federal lawsuit if they pursued collection of the attorney fees.

(Dkt. 15-28 at 2.)

Petitioner represented himself at trial and testified on his own behalf.  (<u>Id.</u> at

23.)  At the time of trial, he had been a practicing attorney since 2010.  (Id.)

## IV.

### PETIONER'S CLAIMS

Petitioner initially alleged four grounds for relief.  (Dkt. 1 at 5-6.)  However, Petitioner subsequently withdrew "Claims 3 and 4 in light of significant changes in California law and his circumstances."  (Dkt. 21 at 5.)

First, Petitioner alleged that the trial court deprived him of his Sixth Amendment right to counsel after he, a practicing attorney at the time of his trial, chose to represent himself.  (Dkt. 1 at 5.)

Second, Petitioner alleged that the trial court deprived him of a competency hearing after he filed a letter from a psychiatrist recommending that he not represent himself or others.  (Id. at 5-6.)

Third, Petitioner alleged that the trial court failed to provide him notice of one of the criminal charges when it permitted the prosecutor to amend the information, which prevented him from defending himself against the crime of stalking with a pending restraining order.  (Id. at 6.)

Fourth, Petitioner alleged that his appellate counsel was ineffective by failing to raise on direct appeal the claim that the trial court erred by permitting the prosecutor to amend the information.  (Id. at 6.)

As explained above, Petitioner's third and fourth claims for relief have been withdrawn.  (Dkt. 21 at 5.)

## V.

### STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in [28 U.S.C.] §§ 2254(d)(1) and (d)(2)."  Harrington v. Richter, 562

1   U.S. 86, 98 (2011).  Under AEDPA's deferential standard, a federal court may grant

2   habeas relief only if the state court adjudication was contrary to or an unreasonable

3   application of clearly established federal law, as determined by the Supreme Court,

4   or was based upon an unreasonable determination of the facts.  Id. at 100 (citing 28

5   U.S.C. § 2254(d)).  "This is a difficult to meet and highly deferential standard for

6   evaluating state-court rulings, which demands that state-court decisions be given the

7   benefit of the doubt[.]"  Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations

8   and internal quotation marks omitted).

9        Petitioner presented all of the grounds in the Petition to the California

10   Supreme Court in his petition for review.  (Dkt. 15-46 at 5 (notice of charges), 7

11   (ineffective assistance of counsel), 9 (self-representation and competency).)  The

12   California Supreme Court summarily denied the petition for review without

13   comment or citation to authority.  (Dkt. 15-47.)  "A spare order denying a petition

14   without explanation or citation ordinarily ranks as a disposition on the merits."

15   Walker v. Martin, 562 U.S. 307, 310 (2011); see also Richter, 562 U.S. at 99

16   ("When a federal claim has been presented to a state court and the state court has

17   denied relief, it may be presumed that the state court adjudicated the claim on the

18   merits in the absence of any indication or state-law procedural principles to the

19   contrary."); Johnson v. Williams, 568 U.S. 289, 301 (2013) ("When a state court

20   rejects a federal claim without expressly addressing that claim, a federal habeas

21   court must presume that the federal claim was adjudicated on the merits -- but that

22   presumption can in some limited circumstances be rebutted.").

23        Where a state court's silent denial follows a lower court's reasoned decision,

24   a federal habeas court "looks through" the unexplained decision to the last reasoned

25   decision as the presumptive basis for the state court's judgment.  Wilson v. Sellers,

26   138 S. Ct. 1188, 1192 (2018); see also Fox v. Johnson, 832 F.3d 978, 985–86 (9th

27   Cir. 2016) ("Under [Ylst v. Nunnemaker, 501 U.S. 797 (1991)], we only look

28   through the last state court decision to a prior decision on the merits if the last

1   decision is unreasoned, that is, if the decision 'does not disclose the reason for the

2   judgment.'") (quoting <u>Ylst</u>, 501 U.S. at 802).

3        Here, Petitioner raised all of the grounds in the instant Petition in state habeas

4   petitions before the Riverside County Superior Court, California Court of Appeal,

5   and California Supreme Court.  (Dkt. Nos. 15-34, 15-36, 15-38, 15-40, 15-42, 15-

6   44, 15-46.)  The Riverside County Superior Court rejected Grounds One, Two, and

7   Four in reasoned decisions.  (Dkt. Nos. 15-35, 15-37.)  The California Court of

8   Appeal rejected Ground Three on the procedural ground that the claim had been

9   waived.  (Dkt. 15-33.)  The California Supreme Court rejected all four grounds for

10  relief without comment.  (Dkt 15-47.)  Accordingly, the Court will "look through"

11  the California Supreme Court's and California Court of Appeal's summary denials

12  (Dkt. Nos. 15-39, 15-41, 15-43, 15-45, 15-47), and apply AEDPA deference to the

13  rationale for denying Petitioner's claims for each ground addressed by the superior

14  court or the court of appeal.

15

16  **VI.**

17  **DISCUSSION**

18  **A.**    <u>**Petitioner Cannot Show that the State Court's Rejection of His Claim for**</u>

19         <u>**Denial of Counsel Under the Sixth Amendment Was Contrary to, or an**</u>

20         <u>**Unreasonable Application of, Supreme Court Precedent.**</u>

21       Petitioner's first ground for relief is that the trial court deprived him of his

22  Sixth Amendment right to representation by counsel at trial after he, a practicing

23  attorney at the time of his trial, chose to represent himself.  (Dkt. 1 at 5.)  Petitioner

24  first raised this claim in his January 10, 2022 habeas petition filed in Riverside

25  County Superior Court.  (<u>See</u> Dkt. 15-36 at 9 "[T]he trial court forced me to stand

26  trial without representative counsel . . . .")  The superior court addressed this claim

27  in its January 25, 2022 denial of Petitioner's habeas petition.  (Dkt. 15-37.)  The

28  superior court concluded that Petitioner "failed to state a factual or legal basis to

support his claim that the court denied him his right to a fair trial by failing to appoint counsel to represent him during the trial . . . ."  (Dkt. 15-37 at 2.)  Here, Petitioner cannot demonstrate an entitlement to habeas relief because the record demonstrates that he was a practicing attorney who unequivocally chose to represent himself, vigorously defended himself in the trial court, and because there is no clearly established Supreme Court precedent defining a post-waiver right to counsel under the Sixth Amendment.

### 1. **Petitioner Unequivocally Chose to Represent Himself and Then Vigorously Litigated His Case in the Trial Court.**

Petitioner had been a practicing attorney for approximately eight years at the time of his trial.  (Dkt. 15-28 at 23).  At one of his first appearances in his criminal case, Petitioner unequivocally demonstrated his desire to represent himself:

DEFENDANT MORALES: Rogelio Morales. I am appearing pro per.

THE COURT: You're an attorney; right?

DEFENDANT MORALES: Yes, your Honor.

(Dkt. 15-8 at 254, Transcript of May 10, 2017 Bail Condition Hearing.)

The record further demonstrates that Petitioner vigorously represented himself throughout the case and only sought the appointment of counsel as a delay tactic.  After having represented himself and filed a number of pretrial motions since his arraignment in May of 2017, Petitioner filed a motion to appoint "at least two counsel, at county expense, pursuant to the Sixth Amendment" on September 5, 2018.  (Dkt. 15-10 at 44.)  Petitioner argued he should receive this assistance at county expense because he was "unable to afford the approximately $80,000 in legal and investigatory costs" required to defend himself.  (Id. at 45.)  At a September 10, 2018 hearing on his motion, Petitioner clarified that his preference was for the county to pay for privately retained counsel, but that he would like a public defender appointed if the court would not approve privately retained counsel.  (Dkt. 15-15 at 92.)  The trial court denied Petitioner's request for privately retained counsel and

then determined that Petitioner was not eligible for the appointment of a public defender because Petitioner made between $5,000 to $15,000 per month according to his financial affidavit.  (Id. at 92-93.)  Indeed, Petitioner admitted at the hearing, "I'm not indigent."  (Id. at 92.)

Petitioner then filed a "Non-statutory Motion to Dismiss or Set Aside The Information For Violation of Defendant's Sixth Amendment Right To Counsel." (Dkt. 15-10 at 60-68.)  In opposing Petitioner's motion, the People cited to Petitioner's public website which listed "Criminal Defense – Misdemeanors and Felonies," among the types of matters Petitioner purported to handle.  (Id. at 85.) The People also noted that Petitioner had filed many motions in his own defense including motions relating to judicial notice, recusal, evidentiary hearings, dismissal, discovery, sanctions, informants, contempt, judicial disqualification, setting aside the information, venue, suppression of evidence, and numerous demurrers.  (Id.)

In denying Petitioner's motion to dismiss, the trial court noted that Petitioner had represented himself since charges were filed against him, had filed more than 20 motions in his criminal case, and had conducted a preliminary hearing that went over two days.  (Dkt. 15-15 at 96-97, 100.)  The trial court found that because Petitioner had not requested the appointment of an attorney until the eve of trial, and had not demonstrated that he was indigent, his request for counsel was a delay tactic.  (Id. at 98.)

On October 9, 2018, the day set for trial to start, Petitioner filed a declaration stating that he lacked the "experience, skill, competence, or knowledge to competently represent" himself and requested "a short continuance to secure defense counsel, Kory Mathewson (CA SBN 198758), who has tentatively agreed to represent me in this matter." (Dkt. 15-10 at 173.)  However, when questioned on the same day, Petitioner acknowledged that he had not yet actually retained Mr. Mathewson and that after discussing the financial arrangements further with Mr.

8

Mathewson, they were unable to come to agreement.  (Dkt. 15-15 at 185-187.)
Based on the fact that Petitioner had not actually retained Mr. Mathewson, the trial
court denied Petitioner's motion.  (Id. at 186.)  The trial court subsequently made a
finding that Petitioner's request for counsel was "delaying the process of
administration of justice" and denied the request:

> [Petitioner], I'm making a finding that you are doing this – your request
> to allow substitution of attorney is delaying the process of administration of
> justice.  The Court at this time will deny your request for substituting –
> having new counsel come in.  You are an attorney.  You are representing
> yourself.  The Court is denying the request.

(Dkt. 15-15 at 196.)  However, the trial court did permit Petitioner to have advisory
counsel for purposes of the trial.  (Id.)

Soon after the trial court's denial of Petitioner's request for counsel, the trial
court noted that Petitioner "appeared to become very ill, so ill that paramedics . . .
were called, and he was taken to . . . the hospital."  (Id. at 201.)  The trial was
continued to October 19, 2018, with Petitioner expected to return from the hospital
with advisory counsel.  (Id. at 214-15.)

On October 19, 2018, Petitioner returned to the trial court and requested a
continuance based on a letter from a psychiatrist indicating the following:

> [Petitioner] is currently under my medical care and may not return to work at
> this time.  Please excuse [Petitioner] for three weeks.  He may return to work
> on November 5th, 2018.  Activity is restricted as follows:  None.

(Id. at 219-20; Dkt. 15-11 at 57.)

The trial court indicated it was confused by this very brief letter because the
last sentence stated that no activity was restricted.  (Dkt. 15-15 at 220.)  Thus, the
trial court ordered Petitioner to return with a letter more clearly describing when he
could return to trial.  (Id. at 221.)  The trial court then continued the trial until
October 26, 2018.  (Id. at 221-22.)

On October 24, 2018, Petitioner filed another motion to continue the trial stating he was "ill and currently under the care of a psychiatrist." (Dkt. 15-10 at 208-09.) Petitioner attached to the motion another letter from the same psychiatrist stating as follows:

> [Petitioner] is currently under my medical care and may not return to work at this time. Due to his new medication patient [sic] I do not recommend patient to represent himself or other's [sic] until further notice. Please excuse [Petitioner] for three weeks. He may return to work on November 5th, 2018. Activity is restricted as follows: None.

(Id. at 214.) The trial court noted that this new letter was identical to the prior letter and even had the same date, with the only difference being that this new letter now stated that the psychiatrist did not recommend that Petitioner represent himself or others until further notice. (Dkt. 15-15 at 228.) Thus, the trial court made "a finding prima facie showing that the letter is not authentic," and denied the motion for continuance. (Id.) "The Court's [sic] making a prima facie showing that the letter that was authored today is fraudulent." (Id. at 229.) Finally, on November 2, 2018, the People requested that Petitioner be held in contempt for falsely claiming to have a medical condition that prevented this matter from proceeding to trial when Petitioner had since appeared in hearings on demurrers in a San Bernardino County Superior Court case. (Id. at 253-54.) The trial court declined to make any finding as to contempt or sanctions at the time, but noted that Petitioner was a licensed attorney "in good standing with the state bar." (Id. at 257.)

## 2.   The Supreme Court Has Not Defined a Post-Waiver Right to Counsel Under the Sixth Amendment.

Petitioner cannot establish a right to federal habeas relief based on the facts described above because the U.S. Supreme Court has not defined a post-waiver right to counsel under the Sixth Amendment and therefore the state court's denial of Petitioner's claim cannot represent an unreasonable application of clearly

10

established federal law.  Indeed, the U.S. Court of Appeals for the Ninth Circuit has expressly recognized that the U.S. Supreme Court has "not directly address[ed] whether and under what conditions a defendant who validly waives his right to counsel has a Sixth Amendment right to reassert it later in the same stage of his criminal trial." John-Charles v. California, 646 F.3d 1243, 1249 (9th Cir. 2011).  In John-Charles, the Ninth Circuit denied habeas relief to a petitioner claiming he was "constitutionally entitled to the reappointment of counsel" by finding that there was no clearly established Supreme Court precedent on this issue.  Id.

Moreover, the Supreme Court has confirmed that it "has never explicitly addressed a criminal defendant's ability to re-assert his right to counsel once he has validly waived it." Marshall v. Rodgers, 569 U.S. 58, 62 (internal quotation marks omitted).  In Marshall, the Supreme Court noted the "tension" between the Sixth Amendment's guarantee of representation and the "concurrent" constitutional right to waive representation. Id. at 62-63.  The Supreme Court observed that "California has resolved this tension by adopting [a] framework" whereby "trial judges are afforded discretion when considering postwaiver requests for counsel; their decisions on such requests must be based on the totality of the circumstances, including the quality of the defendant's representation of himself, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay that might reasonably be expected to follow the granting of such a motion." Id. (internal quotation marks and brackets omitted).  The Supreme Court ultimately denied habeas relief because it could not "be said that California's approach [wa]s contrary to or an unreasonable application of the general standards established by the Court's assistance-of-counsel cases." Id. at 63 (internal quotation marks and brackets omitted).

Here, the Riverside County Superior Court concluded on habeas review that Petitioner "failed to state a factual or legal basis to support his claim that the court denied him his right to a fair trial by failing to appoint counsel to represent him

during the trial . . . ."  (Dkt. 15-37 at 2.)  The state court's rejection of Petitioner's claim is consistent with both <u>Marshall</u> and <u>John-Charles</u> because there is no clearly established federal law defining a post-waiver right to counsel under the Sixth amendment.  Accordingly, "it cannot be said that the state court unreasonably applied clearly established Federal law."  <u>Wright v. Van Patten</u>, 552 U.S. 120, 126, (2008) (internal quotation marks and brackets omitted) (denying habeas relief "[b]ecause our cases give no clear answer to the question presented").  Thus, Petitioner is not entitled to habeas relief on this claim.

Petitioner contends that he "was denied both trial counsel and the right to choose his own retained counsel" at trial in violation of <u>Gideon v. Wainwright</u>, 372 U.S. 335 (1963), <u>United States v. Gonzalez-Lopez</u>, 548 U.S. 140, 147-48 (2006), and <u>Faretta v. California</u>, 422 U.S. 806, 835 (1975).  (Dkt. 21 at 3.)  However, Petitioner' cannot show that the state court's rejection of his claim was contrary to, or constituted an unreasonable application of, any of these Supreme Court precedents.  First, in <u>Gideon</u>, the Supreme Court held that the Sixth Amendment's guarantee of the right to counsel in federal prosecutions applies to the states through the Fourteenth Amendment.  <u>Gideon</u>, 372 U.S. at 342-43.  Here, Petitioner was not deprived of the right to counsel because the record demonstrates that he was a practicing attorney in good standing with the state bar and unequivocally chose to represent himself.  (Dkt. 15-8 at 254; 15-15 at 257.)

Second, in <u>Gonzalez-Lopez</u>, the Supreme Court recognized "the right of a defendant who does not require appointed counsel to choose who will represent him."  <u>Gonzalez-Lopez</u>, 548 U.S. at 144.  As explained by the Supreme Court, "the Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds."  <u>Id.</u>  Here, Petitioner's right to counsel of his choosing was not violated because the record demonstrates that the trial court never prevented Petitioner from hiring the attorney

of his choice.  Instead, Petitioner filed a last-minute motion to try and force the county to pay for private counsel, (Dkt. 15-10 at 44), but Petitioner admitted he was "not indigent," (id. at 92), because he was making between $5,000 to $15,000 per month according to his financial affidavit.  (Id. at 92-93.)  And when Petitioner later filed another request or a continuance so that a specific privately-retained attorney could represent him at trial, Petitioner admitted at a hearing on the request that he had not yet actually retained the specifically-identified attorney and that the attorney had not agreed to Petitioner's financial terms.  (Dkt. 15-15 at 185-187.)

Third, in Faretta, the Supreme Court held that a defendant has the right to forgo appointed counsel and choose to represent himself.  Faretta, 422 U.S. at 835-36.  However, the Supreme Court required that a defendant's waiver of the right to appointed counsel must be made "knowingly and intelligently."  Id. at 835 (internal quotation marks omitted).  The Supreme Court explained that "[a]lthough a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open."  Id. (internal quotation marks omitted).

Here, the record demonstrates that Petitioner knowingly and intelligently chose to represent himself.  As an initial matter, the facts here are fundamentally different than in Faretta because Petitioner had been a practicing attorney for approximately eight years at the time of his trial, (Dkt. 15-28 at 23), and was in good standing with the state bar.  (Dkt. 15-15 at 257).  Therefore, Petitioner actually had the skill and experience of a lawyer and was qualified to competently and intelligently choose self-representation.  See Faretta, 422 U.S. at 835.  Early on in the case, at his bail hearing, Petitioner stated unequivocally that he was an attorney and desired to represent himself.  (Dkt. 15-8 at 254.)  The record shows that Petitioner vigorously represented himself and filed motions in his own defense

13

1    including motions relating to judicial notice, recusal, evidentiary hearings,

2    dismissal, discovery, sanctions, informants, contempt, judicial disqualification,

3    setting aside the information, venue, suppression of evidence, and numerous

4    demurrers.  (Dkt. 15-10 at 85.)  Indeed, prior to trial, Petitioner had filed more than

5    20 motions and had conducted a preliminary hearing that went over two days.  (Dkt.

6    15-15 at 96-97, 100.)  Accordingly, the trial court's denials of Petitioner's last-

7    minute requests for appointed counsel as untimely were permissible under <u>Faretta</u>.

8    This is especially true because the trial court permitted Petitioner to have advisory

9    counsel for purposes of the trial.  (Dkt. 15-15 at 196.)  Accordingly, Petitioner

10   cannot show that the state court's rejection of his claim was contrary to, or

11   constituted an unreasonable application of, the Supreme Court's precedent in

12   <u>Gideon</u>, <u>Gonzalez-Lopez</u>, or <u>Faretta</u>.

13   **B.**    **<u>Petitioner Cannot Show that the State Court's Rejection of His Claim That</u>**

14          **<u>the Trial Court Should Have Conducted a Competency Hearing Was</u>**

15          **<u>Contrary to, or an Unreasonable Application of, Supreme Court</u>**

16          **<u>Precedent.</u>**

17          Petitioner's second ground for relief is that the trial court deprived him of a

18   competency hearing after he filed a letter from a psychiatrist recommending that he

19   not represent himself or others.  (Dkt. 1 at 5-6.)  Petitioner first raised this claim in

20   his January 10, 2022 habeas petition filed in Riverside County Superior Court.

21   (Dkt. 15-36 at 9 ("The trial court forced me to stand trial without . . . a competency

22   hearing . . . .").)  The superior court addressed this claim in a reasoned opinion

23   denying Petitioner's January 10, 2022 habeas petition.  (Dkt. 15-37.)  The superior

24   court concluded that Petitioner "failed to state a factual or legal basis to support his

25   claim . . . that the petitioner gave the court any reason to believe he was not

26   competent to stand trial."  (Dkt. 15-37 at 2.)  The California Supreme Court also

27   denied this claim without comment.  (Dkt. 15-47.)  Here, Petitioner cannot

28   demonstrate an entitlement to habeas relief because the state court's denial of this

claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

### 1.    Legal Standard.

"A criminal defendant has a constitutional due process right not to be tried or convicted while incompetent to stand trial.  This right not only assures that a defendant has the present ability to consult with counsel, to understand the nature and object of the proceedings against him, and to aid in the preparation of his defense, it is fundamental to an adversary system of justice."  Maxwell v. Roe, 606 F.3d 561, 564 (9th Cir. 2010) (internal quotation marks and citations omitted). "[T]he standard for competence to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him."  Godinez v. Moran, 509 U.S. 389, 396 (1993) (internal quotation marks omitted).

The Supreme Court has held that "[t]here are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated."  Drope v. Missouri, 420 U.S. 162, 180 (1975).  Only where the evidence before the trial court raises a "bona fide doubt" as to a defendant's competence to stand trial must the judge on their own motion conduct a competency hearing.  Pate v. Robinson, 383 U.S. 375, 385 (1966). The test for a bona fide doubt is "whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial."  Maxwell, 606 F.3d at 568 (internal quotation marks omitted).

### 2.    **The Trial Court Proceedings.**

As set forth above, after vigorously defending himself for months, Petitioner made numerous requests for a continuance on the eve of trial.  Specifically, on

October 9, 2018, the day initially set for trial to start, Petitioner sought a continuance so that privately retained counsel could take over the trial.  (Dkt. 15-10 at 173.)  The trial court ultimately denied the request because Petitioner admitted that he had not actually retained private counsel and the trial court made a finding that Petitioner was "delaying the process of administration of justice."  (Dkt. 15-15 at 185-87, 196.)  Soon after the trial court's denial of Petitioner's request, the trial court noted that Petitioner "appeared to become very ill" and was taken to the hospital.  (Id. at 201.)  The trial was continued to October 19, 2018, with Petitioner expected to return from the hospital with advisory counsel.  (Id. at 214-15.)

On October 19, 2018, Petitioner returned to the trial court and requested another continuance based on a letter from a psychiatrist.  (Id. at 219-20; Dkt. 15-11 at 57.)  The letter stated that Petitioner was under the medical care of the psychiatrist, that Petitioner "may not return to work at this time," and requested that Petitioner be excused "for three weeks."  (Dkt. 15-11 at 57.)  However, the letter also stated, "Activity is restricted as follows:  None."  (Id.)  The trial court indicated that the very brief letter was confusing because the last sentence stated that no activity was restricted and therefore ordered Petitioner to return with a letter more clearly describing when he could return to trial.  (Dkt. 15-15 at 220-21.)

On October 24, 2018, Petitioner filed yet another request for a continuance and submitted a slightly revised letter.  (Dkt. 15-10 at 208-09.)  However, this new letter was identical to the prior letter and even had the same date, with the only difference being that this new letter included one sentence stating, "Due to his new medication patient [sic] I do not recommend patient to represent himself or other's [sic] until further notice."  (Id. at 214.)  Thus, the trial court made "a finding prima facie showing that the letter is not authentic," and denied the request for a continuance.  (Dkt. 15-15 at 228.)  "The Court's [sic] making a prima facie showing that the letter that was authored today is fraudulent."  (Id. at 229.)

Finally, on November 2, 2018, the People requested that Petitioner be held in

contempt for falsely claiming to have a medical condition that prevented this matter from proceeding to trial when Petitioner had since appeared in hearings on demurrers in a San Bernardino County Superior Court case.  (Id. at 253-54.)  The prosecutor explained that "the People have recently discovered that [Petitioner] has made at least one court appearance and has filed additional legal documents in the time during which he submitted documents to the Court stating he was unable to proceed in this matter to his medical condition."  (Id. at 253.)  Specifically, the prosecutor noted that on October 10, 2018, Petitioner "pretended to pass out" and was sent to the hospital.  (Id.)  However, the prosecutor's office received a document on October 23, 2018 with a signature date of October 16, 2023, which is during the time before Petitioner was medically cleared to return to trial.  (Id.)  Then shortly after Petitioner submitted his first letter from the psychiatrist, Petitioner mailed two oppositions to demurrers in a San Bernardino County Superior Court case.  (Id. at 253-54.)  The prosecutor further noted that on October 26, 2023, Petitioner appeared at a hearing on motions *in limine* and "appeared lucid."  (Id. at 254.)  "He made appropriate arguments regarding his motions" and when the trial court asked if Petitioner would like a copy of his exhibit list, Petitioner "stated, no, he can remember what was on his exhibit list."  (Id.)  The trial court ultimately declined to "make any findings as to contempt or sanctions," but stated that it would "consider those requests."  (Id.)

### 3.   The Facts Before the Trial Court Were Insufficient to Raise a Bona Fide Doubt As to Petitioner's Competency.

Petitioner relies primarily on the psychiatrist's letters to contend that the evidence before the trial court was sufficient to raise a bona fide doubt as to Petitioner's competence.  (Reply at 5.)  However, the letters were ambiguous at best because they stated there was no restriction on Petitioner's activity, (Dkt. 15-11 at 57; Dkt. 15-10 at 214), and the trial court made a finding that the second letter was fraudulent.  (Dkt. 15-15 at 228-29.)  The trial court's factual finding regarding the

1    second letter is entitled to a presumption of correctness.  See 28 U.S.C. §

2    2254(e)(1).[2]

3          Moreover, the record contains ample evidence of Petitioner's competency

4    based on his vigorous representation of himself throughout the case.  See United

5    States v. Johnson, 610 F.3d 1138, 1147 (9th Cir. 2010) (record amply supported

6    district court's determination that defendants were competent to represent

7    themselves where they "gave opening statements, testified, examined and cross-

8    examined witnesses, challenged jury instructions, and delivered closing arguments

9    of significant length").  For example, Petitioner filed numerous motions in his own

10   defense including motions relating to judicial notice, recusal, evidentiary hearings,

11   dismissal, discovery, sanctions, informants, contempt, judicial disqualification,

12   setting aside the information, venue, suppression of evidence, and numerous

13   demurrers.  (Dkt. 15-10 at 85.)  Indeed, prior to trial, Petitioner had filed more than

14   20 motions and had conducted a preliminary hearing that went over two days.  (Dkt.

15   15-15 at 96-97, 100.)  Additionally, the People pointed out in their request for

16   contempt that even after claiming to need a continuance due to a medical condition,

17   Petitioner filed briefs and appeared in hearings on demurrers in another case.  (Dkt.

18   15-15 at 253-54.  The prosecutor further noted that on October 26, 2023, Petitioner

19   appeared at a hearing on motions in limine and "appeared lucid."  (Id. at 254.)  "He

20   made appropriate arguments regarding his motions" and when the trial court asked if

21   Petitioner would like a copy of his exhibit list, Petitioner "stated, no, he can

22

23   _____

     [2] Even if Petitioner could rebut the presumption of correctness of the trial court's
24   finding that the second letter was fraudulent, the second letter's vague reference to
     Petitioner taking some unspecified "new medication" would not be sufficient to
25   trigger the need for a competency hearing.  (Dkt. 15-10 at 214.)  This is because
     there was ample evidence that Petitioner was competent based on his vigorous
26   representation of himself throughout the case.  See Burket v. Angelone, 208 F.3d
     172, 192-94 (4th Cir. 2000) (holding that evidence of "mild mental impairments"
27   and fact that the petitioner had been treated with anti-psychotic drugs did not create
     bona fide doubt as to competence when considered in light of other evidence that the
28   petitioner understood the charges and trial proceedings).

1   remember what was on his exhibit list." (Id.)

2       Accordingly, the record provides strong support for the state court's denial of

3   Petitioner's claim that he was entitled to a competency hearing. Thus, Petitioner

4   cannot show that the state court's denial of this claim was contrary to, or an

5   unreasonable application of, clearly established Supreme Court precedent.

6   **C.**   **Petitioner Withdrew His Third Claim for Relief and the Claim Is Both**

7   **Procedurally Defaulted and Fails on the Merits.**

8       Petitioner initially asserted a third ground for relief that the trial court failed to

9   provide him notice of one of the criminal charges when it permitted the prosecutor

10  to amend the information, which prevented him from defending himself against the

11  crime of stalking with a pending restraining order. (Dkt. 1 at 6.) While Petitioner

12  clearly and unequivocally withdrew this ground for relief in his Reply, the Court

13  will briefly explain why the claim must be denied in any event. (See Dkt. 21 at 5

14  ("Petitioner hereby withdraws Claims 3 and 4 in light of significant changes in

15  California law and his circumstances.").) This claim is procedurally barred because

16  the California Court of Appeal determined that Petitioner waived this claim by

17  failing to timely raise it in his initial direct appeal. Moreover, Petitioner cannot

18  demonstrate that the state court's rejection of this claim was unreasonable in light of

19  the fact that he had notice of the legal theory that he stalked the victim while a

20  restraining order was pending.

21      **1.**   **Petitioner's Third Claim Is Procedurally Defaulted.**

22      Federal courts "will not review a question of federal law decided by a state

23  court if the decision of that court rests on a state law ground that is independent of

24  the federal question and adequate to support the judgment." Coleman v. Thompson,

25  501 U.S. 722, 729 (1991); Walker v. Martin, 562 U.S. 307, 315 (2011). The

26  procedural default doctrine, "bar[s] federal habeas [review] when a state court

27  declined to address a prisoner's federal claims because the prisoner had failed to

28  meet a state procedural requirement." Coleman, 501 U.S. at 729-30; Hanson v.

1    Mahoney, 433 F.3d 1107, 1113 (9th Cir. 2006).

2         Here, the last state court to address Petitioner's third claim was the California

3    Supreme Court, which denied Petitioner's petition for review without comment or

4    citation to authority.  (Dkt. 15-47.)  Before that, Petitioner raised his third claim

5    before the California Court of Appeal in a purported direct appeal of the trial court's

6    denial of a request to correct the abstract of judgment.  See (Dkt. 15-33 at 6

7    ("Defendant claims in this appeal that the trial court's sentence on count 51 was

8    unauthorized because the charging documents only gave him notice that he was

9    charged under section 646.9, subdivision (a), and not subdivision (b).").)  The court

10   of appeal held that Petitioner waived this claim because it should have been raised in

11   his direct appeal:

12        "[Defendant] provides no excuse for failing to previously raise the issue, and

13        in fact ignores that a prior appeal had been filed and adjudicated.  There has

14        been no factual or legal change since the prior appeal.  The factual basis for

15        the claim was the same when defendant filed his first appeal.  Defendant

16        cannot now raise the issue that should have been raised in the first appeal.

17        The claim is waived."

18   Id. at 8.

19        Because the California Court of Appeal rejected Petitioner's third claim for

20   relief as waived, the claim is now procedurally barred on federal habeas review.  See

21   Paulino v. Castro, 371 F.3d 1083, 1093 (9th Cir. 2004) ("The court of appeal held

22   that Paulino had waived his argument that the trial court had a duty to so instruct the

23   jury sua sponte. Paulino's claim is therefore procedurally barred.").  Moreover,

24   Petitioner has failed to show, or even argue for, cause and prejudice to excuse the

25   procedural bar.  See Murray v. Carrier, 477 U.S. 478, 490-91(1986) ("A State's

26   procedural rules serve vital purposes at trial, on appeal, and on state collateral

27   attack. . . . These legitimate state interests . . . warrant our adherence to the

28   conclusion . . . that the cause and prejudice test applies to defaults on appeal as to

20

1   those at trial."); Martinez-Villareal v. Lewis, 80 F.3d 1301, 1305 (9th Cir. 1996)

2   ("To demonstrate cause, the petitioner must show the existence of some objective

3   factor external to the defense which impeded counsel's efforts to comply with the

4   State's procedural rule." (internal quotation marks and brackets omitted)).

5         **2.      Petitioner's Third Claim Also Fails on the Merits.**

6         Even if Petitioner's third claim were not procedurally barred, which it is, it

7   would also fail on the merits.  Petitioner ultimately raised this claim in his state

8   habeas petition before the California Supreme Court.  (See Dkt. 15-46 at ("The trial

9   court deprived me of my procedural due process rights to notice of the charges when

10  it illegally changed the offense charged in the information and prejudiced my

11  substantial rights.").)  The California Supreme Court summarily denied the petition.

12  (Dkt. 15-47.)  On federal habeas review, Petitioner cannot show that the state court's

13  rejection of this claim was unreasonable in light of the fact that Petitioner had notice

14  of the legal theory that he stalked the victim while a restraining order was pending.

15        "The Sixth Amendment guarantees a criminal defendant the fundamental

16  right to be informed of the nature and cause of the charges made against him so as to

17  permit adequate preparation of a defense."  Gautt v. Lewis, 489 F.3d 993, 1002 (9th

18  Cir. 2007).  To determine whether the defendant received constitutionally adequate

19  notice, the court "begin[s] by analyzing the content of the information."  Id. at 1003.

20  "To satisfy this constitutional guarantee, the charging document need not contain a

21  citation to the specific statute at issue; the substance of the information, however,

22  must in some appreciable way apprise the defendant of the charges against him so

23  that he may prepare a defense accordingly."  Id. at 1004.

24        Moreover, "a defendant can be adequately notified of the nature and cause of

25  the accusation against him by means other than the charging document."  Calderon

26  v. Prunty, 59 F.3d 1005, 1009 (9th Cir. 1995).  The evidence at the preliminary

27  hearing, the prosecutor's opening statements and the trial evidence may provide the

28  requisite notice.  See Murtishaw v. Woodford, 255 F.3d 926, 954 (9th Cir. 2001)

1   (prosecution's opening statement and evidence provided defendant with notice of

2   prosecution's felony-murder theory).

3       Here, the prosecutor put Petitioner on notice of the stalking with a pending

4   restraining order theory during the preliminary hearing.  (Dkt. 15-7 at 121.)  And

5   Petitioner subsequently demonstrated his awareness that the People intended to

6   proceed with this theory under California Penal Code § 646.9(b) because he

7   expressly mentioned it in one of his pretrial demurrers.  (See Dkt. 15-7 at 254

8   ("Defendant . . . is charged with violating 646.9(b), a felony, for allegedly stalking

9   during an active restraining order.").)  Petitioner was also put on notice of this

10  theory by the evidence adduced at trial during the prosecutor's case-in-chief.  (See,

11  e.g., Dkt. 15-17 at 171, 181, 188, 206.)  Indeed, testimony by the victim

12  demonstrated that Petitioner used social media to harass her, as he repeatedly posted

13  vulgar and impugning comments on her professional Facebook page, sometimes as

14  many as 25 or 30 times within a few minutes.  (Id. at 140-67.)  The evidence further

15  showed that after the restraining order was issued, Petitioner continued to post

16  messages on the victim's Facebook page.  (Id. at 195, 204.)

17      Finally, the decision to amend the information did not meaningfully impact

18  Petitioner's ability to raise a defense against the modified charge.  Indeed, Petitioner

19  argued in his closing that the restraining order was invalid, that he did not believe

20  what he was doing was unlawful, and that he therefore did not willfully violate the

21  restraining order.  (See Dkt. 15-19 at 225-26.)   Thus, Petitioner cannot show that

22  the timing of the trial court's decision to allow the prosecutor to amend the

23  information somehow impacted his ability to meaningfully defend against the

24  charge that he stalked the victim while an active restraining order was pending.

25  Accordingly, Petitioner cannot show that the state court's rejection of this claim was

26  unreasonable.  See Gautt, 489 F.3d at 1002; see also Miller v. Rowland, 927 F.2d

27  610 (9th Cir. 1991) (unpublished disposition) (denying habeas relief on claim of

28  defective information because petitioner "knew about the charges of the priors, since

22

1    at trial he argued their validity").

2    **D.**     **Petitioner Withdrew His Fourth Claim for Relief and the Claim Fails on**

3           **the Merits.**

4           Petitioner initially asserted a fourth ground for relief that his appellate counsel

5    was ineffective by failing to raise on direct appeal his claim that the trial court erred

6    by permitting the prosecutor to amend the charges.  (Dkt. 1 at 6.)  While Petitioner

7    clearly and unequivocally withdrew this ground for relief in his Reply, the Court

8    will briefly explain why the claim must be denied in any event.  (See Dkt. 21 at 5

9    ("Petitioner hereby withdraws Claims 3 and 4 in light of significant changes in

10   California law and his circumstances.").)

11          Petitioner raised this ineffective assistance argument in his December 21,

12   2021 state habeas petition filed in the Riverside County Superior Court.  (Dkt. 16-34

13   at 5 ("Appellate counsel waived meritorious claim on appeal resulting in an illegal

14   sentence/conviction.").)  The superior court denied the December 21, 2021 petition

15   in a reasoned opinion on March 21, 2022, as follows:

16          "As detailed in previous court of appeal decisions in his case, petitioner

17          was found guilty by a jury in count 51 of violating subdivision (b) of Penal

18          Code section 646.9 rather than subdivision (a) which was actually charged in

19          the information.  The distinction between the two subdivisions is that

20          subdivision (b) requires that a court order by in place against the defendant at

21          the time of the alleged offense, an the order must enjoin the commission of

22          the conduct described in subdivision (a).  The petition's exhibits reflect that

23          the trial court permitted the subdivision (b) allegation to be submitted to the

24          jury based on the evidence presented at trial.  This was a proper exercise of

25          judicial discretion just as it was perfectly appropriate for appellate counsel not

26          to challenge that ruling on direct appeal.  (Pen. Code, § 1009.)  After all,

27          appellate counsel succeeded in securing the reversal of 49 of 62 counts for

28          which petitioner was convicted.  The court is quite sure that an informal poll

                                        23

1   of experienced criminal appellate counsel would reveal that the outcome here

2   is the exception and not the rule for the overwhelming majority of criminal

3   appeals.

4         In sum, petitioner fails to explain how and why the actions of appellate

5   counsel fell below professional standards given counsel's obligation to

6   present only the strongest claims on appeal.  Petitioner fails to explain how

7   the omitted claim would have succeeded on appeal given that the disputed

8   action of the trial court was discretionary, and in that same vein the petition

9   fails to explain how an abuse of discretion occurred.  Finally, the court notes

10   the absence of any declaration or affidavit from appellate counsel that does or

11   does not explain the strategy employed in litigating the direct appeal.

12   Petitioner has thus failed to establish either prong of the *Strickland* analysis."

13   (Dkt. 15-35 at 2-3.)

14   On federal habeas review, Petitioner cannot show that the superior court's

15   denial of this claim constitutes an unreasonable application of the familiar standard

16   from Strickland v. Washington, 466 U.S. 668, 687 (1984).  As an initial matter, the

17   Court agrees with the superior court's determination that Petitioner has failed to

18   show his appellate counsel performed in a deficient manner by declining to

19   challenge the amendment of the charges.  Indeed, it is entirely appropriate for

20   appellate counsel not to raise every possible claim and to instead focus the appellate

21   court's attention on the strongest claims.  See Smith v. Robbins, 528 U.S. 259, 288

22   (2000) ("[W]e held that appellate counsel who files a merits brief need not (and

23   should not) raise every nonfrivolous claim, but rather may select from among them

24   in order to maximize the likelihood of success on appeal.").  Here, Petitioner's

25   appellate counsel raised several meritorious claims that resulted in the reversal of

26   dozens of charges.  (Dkt. 15-33.)

27   Moreover, Petitioner cannot demonstrate prejudice based on his appellate

28   counsel's failure to challenge the trial court's discretionary decision to allow the

1   prosecutor to amend the charges.  See Moormann v. Ryan, 628 F.3d 1102, 1106 (9th

2   Cir. 2010) ("[T]he petitioner must show prejudice, which in this context means that

3   the petitioner must demonstrate a reasonable probability that, but for appellate

4   counsel's failure to raise the issue, the petitioner would have prevailed in his

5   appeal.").  As set forth above in the discussion of Petitioner's third claim for relief,

6   Petitioner had notice of the legal theory that he stalked the victim while a restraining

7   order was pending and the record demonstrates that the trial court's decision to

8   permit amendment of the information did not meaningfully impact Petitioner's

9   ability to raise a defense against the modified charge.  Thus, Petitioner cannot show

10  that a challenge to the amendment of the information would have succeeded on

11  appeal and therefore Petitioner cannot establish prejudice.  See Wildman v. Johnson,

12  261 F.3d 832, 840 (9th Cir. 2001). "[A]ppellate counsel's failure to raise issues on

13  direct appeal does not constitute ineffective assistance when appeal would not have

14  provided grounds for reversal.").  Accordingly, the state court's rejection of

15  Petitioner's fourth claim for relief was reasonable.

## VII.

## RECOMMENDATION

IT IS RECOMMENDED that the District Court issue an Order: (1) accepting
and adopting this Report and Recommendation; (2) DENYING the Petition; and (3)
directing that Judgment be entered dismissing this action WITH PREJUDICE.

DATED:  October 17, 2023

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE

## __NOTICE__

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in Local Civil Rule 72 and review by the District Judge whose initials appear in the docket number.  **Under Federal Rule of Civil Procedure 72(b)(2), any objection to this Report and Recommendation must be filed within fourteen (14) days**.  No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.